UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
------------------------------------------------------------x
In re:                                            :
                                                  :           1:19-mc-24587-COOKE
Subpoenas directed to BEN BRAUSER,                :
DANIEL BRAUSER AND JOSHUA BRAUSER.  :
                                                  :
------------------------------------------------------------x

## DECLARATION OF NANCY A. BROWN

I, Nancy A. Brown, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am a member of the bar of the State of New York.  I am employed as Senior

Trial Counsel in the Division of Enforcement at the New York Regional Office of Plaintiff

Securities and Exchange Commission ("Commission"), and represent the Commission in this

matter.  I appear before the Court pursuant to Rule 4(d) of the Local Rules of the Southern

District of Florida, Rules Governing the Admission, Practice, Peer Review, and Discipline of

Attorneys.  I submit this Declaration in Support of the Commission's Opposition to Petitioners'

Motion to Quash Subpoenas Deces [sic] Tecum, or In the Alternative, Motion for Protective

Order (DE 1).  I am fully familiar with the facts and circumstances herein.

Background of the Commission's Case Against Petitioners' Father

2.      The Commission filed its case against ten individuals, including the Petitioners'

father, Michael Brauser, and ten corporate entities, including Michael Brauser's entity, Grander

Holdings, Inc. ("Grander"), on September 8, 2018.  See SEC v. Honig, et al., 18 Civ. 1875 (ER)

(S.D.N.Y.) (DE 1) ("Honig").)  After reaching complete resolution as to Defendants Phillip Frost

and Mark Groussman, and their entities, Frost Gamma Investments Trust and Melechdavid, Inc.,

(Honig Matter (DE 77; 93)), the Commission filed its Amended Complaint on March 8, 2019

("Complaint").  (Honig (DE 105); see also Exhibit D to Petitioners' Motion).  The Complaint

does not refer to any person by name in the Complaint except current Defendants, consistent with Commission practice to generally mask the identities of non-parties in complaints.

3.     The Complaint alleges a history and pattern of fraudulent pump-and-dump schemes carried out over nearly a decade, and involving Defendants Barry Honig (and his entity GRQ Consultants, Inc.), John Stetson (and his entities Stetson Capital Investments Inc., and HS Contrarian Investments, LLC), John O'Rourke (and his entity ATG Capital LLC), and Petitioners' father, Michael Brauser (and his entity Grander) (together, the "Core Defendants'), and those individuals and entities that the Core Defendants allowed to co-invest with them. (Complaint ¶¶ 55-61.)

4.     While the Complaint focuses on the Core Defendants' activity in connection with the fraudulent pump-and-dump schemes involving three issuers – BioZone Pharmaceuticals Inc. ("BioZone"), MGT Capital Investments, Inc. ("MGT"), and MabVax Therapeutics Holdings, Inc. ("MabVax")[1] – it also alleges that the three issuers were only a small sampling of the pump-and-dump schemes in which the Core Defendants engaged, and that the Core Defendants' conduct in the three schemes merely followed a long-standing pattern and practice.  (Complaint ¶ 55.)  It further alleges that Petitioners' father, Defendant Brauser, co-invested with Honig in over 40 issuers between 2011 and mid-2018.  (Complaint ¶ 60.)

5.     The Complaint also notes that as part of the pattern of Defendants' schemes, the Defendants frequently invited other, trusted individuals to co-invest with them.  Thus, the Complaint alleges that the Core Defendants allowed those to participate whom they could trust so that "shares were held only by individuals and entities that (1) permitted Honig to direct how

---

[1]     As is consistent with Commission practice generally not to name uncharged persons or entities in a complaint, the Complaint refers to BioZone as Company "A"; MGT as Company "B"; and MabVax as Company "C."

they voted their shares and/or acquiesced in Honig's control of the management of the company, and (2) refrained from selling their shares until the optimal time for group members to profit from the planned post-pump dump." (Id. ¶ 57.)  The Complaint alleges specifically that Michael Brauser frequently co-invested with Honig through his own accounts, Grander's account, "or through family members' accounts." (Id. ¶ 60.)

Petitioners' Involvement in the Defendants' Schemes

      6.      Documents the Commission has obtained to date reflect that all three Petitioners were frequent co-investors with their father, Defendant Michael Brauser, including in issuers named in the Commission's Complaint and Subpoena.  Appended hereto as Exhibit A are examples of documents obtained from transfer agents, brokers, issuers and Defendants, that show common investments made in Majesco Entertainment Co., Fuse Science, Senesco Technologies, Inc., IZEA Worldwide, Passport Potash, Inc., and MusclePharm Corporation, and two of the issuers identified in the Complaint, BioZone and MabVax.[2]

      7.      Ben Brauser's involvement in his father's investments ran deeper.  From the documents obtained by the Commission to date, it appears that Ben Brauser frequently acted as his father's assistant in correspondence with brokers, issuers, and others to effect his father's transactions, and manage and track his holdings in the securities he acquired.  Appended hereto as Exhibit B are examples of Ben Brauser's communications with third parties to effect transactions and manage holdings in his father's (and sometimes his brothers') investments, including at least one communication in which Ben Brauser is collecting information about the

---

[2]     All exhibits have been redacted in conformity with Fed. R. Civ. P. 5.2 and to protect personal identifying or sensitive material.

status of his brothers' Daniel Brauser's and Joshua Brauser's accounts.[3]

8.      Each of the issuers specified in the Commission's Subpoenas to Petitioners is an issuer in which Defendant Brauser invested alongside Defendant Honig.  Each of the persons and entities specified in the Subpoenas' Request No. 3 was involved in stock promotion activities, including activities with respect to promotional campaigns for issuers in which Defendants Brauser and Honig invested.

9.      Michael Brauser has made no assertion in the <u>Honig</u> matter that his son, Ben Brauser, acted as his attorney.

The Commission's Efforts to Negotiate the Scope of the Subpoenas to Lessen Petitioners' Burden

10.     The Commission worked in good faith to try to come to some agreement with Petitioners on the scope of the Subpoenas to lessen their burden of compliance.

11.     Petitioners' counsel served his clients' objections to the Subpoenas in an email, dated October 17, 2019.  The stated date for compliance in the Subpoenas was October 14, 2019. Appended hereto as <u>Exhibit D</u> is the email I received from Petitioners' counsel with their objections.[4]

12.     On October 23, 2019, I spoke with Petitioners' counsel by phone and asked him what the scope of responsive documents was, and whether there were particular requests that returned a burdensome number of responsive documents.  Petitioners' counsel was unable to

---

[3]      None of these examples includes Defendant Brauser in the email chain so none of these emails would be available from him.  At least one email, listing Michael Brauser's investments in BioZone, was copied to him, but was not included in Michael Brauser's production to the Commission, although it was called for by the Commission's document requests.  <u>See</u> <u>Exhibit C</u>.

[4]      On October 11, 2019, I had a call with Petitioners' counsel in which he requested, and I consented to, a 30-day extension to produce documents for Daniel Brauser and Joshua Brauser, and a 60-day extension to produce documents for Ben Brauser.

answer those questions because he had not yet collected all of Petitioners' documents, but he noted that many of the names of persons and entities in the Subpoenas were unfamiliar to his clients. I asked Petitioners' counsel to let us know what the universe of responsive documents was once he had collected his clients' documents.

13.     In our second conversation, on November 4, 2019, Petitioners' counsel announced that he had now collected all three Petitioners' emails for the period requested and advised that they comprised 99 gigabytes of data. He offered no delineation of what part of that collection was responsive to the topics itemized in the Subpoenas, nor a breakdown of the data by custodian. Nor could he advise which production requests were producing large numbers of responsive documents because he had run no searches on the email collection.

14.     Petitioners' counsel asked that we withdraw the Subpoena directed to Ben Brauser, given his status as counsel to his father, and that we limit our Subpoenas to Daniel Brauser and Joshua Brauser to a three year period – 2013-2016 – and to documents reflecting only the three issuers specifically identified in our Complaint. We responded that we would consider his requests and get back to him promptly. The next day, Petitioners filed their motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 16, 2018
New York, New York

Nancy A. Brown